1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10     APRIL GRAYSON,

11                    Petitioner,              No. CIV S-01-2218 LKK JFM P

12            vs.

13     GWENDOLYN MITCHELL, et al.,

14                    Respondents.             FINDINGS & RECOMMENDATIONS

15     _____/

16            Petitioner is a state prisoner proceeding pro se with an application for a writ of

17     habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges her 1998 conviction on

18     charges of kidnapping, false imprisonment, procuring for purposes of prostitution, pandering, and

19     bringing an explosive into jail.  She seeks relief on the grounds that: (1) there was insufficient

20     evidence to support her conviction of bringing an explosive into jail and procuring for purposes

21     of prostitution; (2) the trial court erred in failing to give a unanimity jury instruction on

22     kidnapping and the firearm use enhancements and in failing to give a jury instruction on the

23     lesser included offense of contributing to the delinquency of a minor; (3) the trial court erred in

24     admitting evidence that was unduly prejudicial; (4) the trial court erred in failing to hold a

25     Marsden hearing; and (5) she was improperly convicted of several lesser included offenses.

26     /////

                                              1

1  Upon careful consideration of the record and the applicable law, the undersigned will

2  recommend that petitioner's application for habeas corpus relief be denied.

3  <center>FACTUAL BACKGROUND[1]</center>

4      [Petitioner and co-defendant Lewis] were driving from Southern
California to Sacramento with a woman named Lucille when they
5  met 14-year-old Corrine, a runaway, outside a restaurant. They
asked Corrine if she would like to accompany them, and Corrine
6  agreed.

7      [Petitioner and co-defendant Lewis] spoke to Corrine about
working as a prostitute, and they instructed her how to dress, how
8  to behave, and how much to charge. [Petitioner and co-defendant
Lewis] advised Corrine that she should tell people she was 19, and
9  they said they would get identification for her.

10     When the group arrived in Sacramento, they went to a grocery
store, where they met 19-year-old Shadell. Shadell's boyfriend had
11 deserted her at the store, and Shadell was crying and upset.
[Petitioner and co-defendant Lewis] offered to help by giving her a
12 ride home. Rather than taking her home, [petitioner and co-
defendant Lewis] brought her with them to a motel, where they
13 rented a room. Shadell asked about her ride home, but her
question went unanswered.

14

15     Defendant Lewis instructed defendant Grayson to get Corrine
"ready because somebody likes her." While Corrine took a shower
16 and Lewis was away from the motel, Grayson told Shadell that
since she had gotten into the car with them, Shadell had chosen
their lifestyle, and would work as a prostitute for them.
17
    Grayson then pulled a gun from the crotch of her pants, pointed it
18 at Shadell and warned that if "a hoe tries to run away from her
pimp, then they kill her or put her in the hospital, either one, but
19 they do something pretty bad to her." Grayson showed Shadell the
bullets in the chamber and described them as "the kind that
20 ricochet through your body . . . ."

21     Grayson said Lewis provided her everything she needed, and said
Lewis would do the same for Shadell.
22
    Lewis returned to the motel and took Corrine to a house where she
23 engaged in acts of prostitution. Corrine gave Lewis the $280 she
earned that evening.

24 _____

25     [1] This statement of facts is taken from the August 30, 2000 opinion by the California
Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 3-6, appended as
26 Exhibit F to Respondent's Answer, filed on March 3, 2003.

While Lewis and Corrine were gone, Shadell walked with defendant Grayson to a convenience store to buy some items and then walked back to the motel.

When Lewis returned hours later, he asked Shadell if Grayson had talked to her, and what her reaction was.  Shadell replied that she thought their idea was "stupid" and she reiterated that she wanted to leave.  Lewis told her she could go, but said she could not use the phone and would not get a ride.

Shadell then discovered that $160 was missing from her purse, and she became very angry. [Petitioner and co-defendant Lewis] warned her to be quiet or Lewis would beat her.  Lewis said he would get her money back if she stayed with them.

Grayson took Shadell to Stockton Boulevard to solicit for prostitution.  Grayson carried her gun with her and showed it to Shadell.  She instructed Shadell what to do and say, but they were unsuccessful in their efforts.

They returned to the motel.  Later that night, Shadell saw Lewis have sex with Corrine in the motel room.

In the morning, Shadell left while everyone else was asleep, and flagged down a passing highway patrol officer. [Petitioner and co-defendant Lewis] were arrested and placed in patrol cars.  Before officers left the motel, they discovered Grayson's gun hidden behind the passenger's seat in the vehicle.  Grayson admitted the gun was hers and said it had been "embedded into her crotch area," but informed the officers that she did not have the magazine for the gun.  Because Shadell had told them otherwise, the officers instructed personnel at the jail to search Grayson.  In response to their questions, Grayson told the jail officers that she had secreted the clip in her vagina, and she retrieved it.

At trial, Corinne admitted having sex with defendant Lewis.  She denied having worked for [petitioner and co-defendant Lewis] and instead testified she had worked as a prostitute on her own.  Officers testified that Corinne had said otherwise in previous interviews.

The jury convicted Grayson of the kidnapping and false imprisonment of Shadell, as well as procuring and pandering, and found the charged firearm enhancements to be true.  The jury also convicted Grayson of bringing explosives into the jail.  (§ 4574.)

The jury acquitted both [petitioner and co-defendant Lewis] of kidnapping Corinne, but found [petitioner and co-defendant Lewis] guilty of pimping and pandering.  The jury also convicted defendant Lewis of one count of lewd and lascivious conduct, and the court found Lewis's charged priors to be true.

3

1

2      The court sentenced defendant Grayson to an aggregate prison term
       of 20 years 8 months, and sentenced defendant Lewis to the
3      mandated term of 50 years to life.

4    (People v. April Lynne Grayson, et al., slip op. at 3-6.)

5                                    ANALYSIS

6    I.  Standards for a Writ of Habeas Corpus

7           Federal habeas corpus relief is not available for any claim decided on the merits in

8    state court proceedings unless the state court's adjudication of the claim:

9           (1) resulted in a decision that was contrary to, or involved an
            unreasonable application of, clearly established Federal law, as
10          determined by the Supreme Court of the United States; or

11          (2) resulted in a decision that was based on an unreasonable
            determination of the facts in light of the evidence presented in the
12          State court proceeding.

13   28 U.S.C. § 2254(d).

14          Under section 2254(d)(1), a state court decision is "contrary to" clearly

15   established United States Supreme Court precedents "if it 'applies a rule that contradicts the

16   governing law set forth in [Supreme Court] cases', or if it 'confronts a set of facts that are

17   materially indistinguishable from a decision'" of the  Supreme Court and nevertheless arrives at

18   different result.  Early v. Packer, 573 U.S. 3, 8 (2002) (quoting Williams v. Taylor, 529 U.S. 362,

19   405-406 (2000)).

20          Under the  "unreasonable application" clause of section 2254(d)(1), a federal

21   habeas court may grant the writ if the state court identifies the correct governing legal principle

22   from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

23   prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

24   simply because that court concludes in its independent judgment that the relevant state-court

25   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

26   application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

                                            4

1  (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

2  question, is left with a 'firm conviction' that the state court was 'erroneous.'")

3          The court looks to the last reasoned state court decision as the basis for the state

4  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

5  reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

6  habeas court independently reviews the record to determine whether habeas corpus relief is

7  available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

8  II.  Petitioner's Claims

9          A.  Sufficiency of the Evidence

10          Petitioner claims that the evidence was insufficient to support her conviction on

11  charges of bringing an explosive into jail and procuring for purposes of prostitution.  These

12  claims were rejected by the California Court of Appeal in a written decision on petitioner's direct

13  appeal, and by the California Supreme Court without comment on habeas review.  (See Exs. F,

14  G, H to Answer.)  After setting forth the applicable legal principles, the court will evaluate these

15  two claims in turn below.

16          1.  Legal Standards

17          When a challenge is brought alleging insufficient evidence, federal habeas corpus

18  relief is available if it is found that upon the record evidence adduced at trial, viewed in the light

19  more favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond

20  a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Under Jackson, the court

21  must review the entire record when the sufficiency of the evidence is challenged on habeas.

22  Adamson v. Ricketts, 758 F.2d 441, 448 n.11 (9th Cir. 1985), vacated on other grounds, 789 F.2d

23  722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987).  It is the province of the jury to 'resolve

24  conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

25  facts to ultimate facts."  Jackson, 443 U.S. at 319.  "The question is not whether we are

26  personally convinced beyond a reasonable doubt.  It is whether rational jurors could reach the

1    conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).  The

2    federal habeas court determines sufficiency of the evidence in reference to the substantive

3    elements of the criminal offense as defined by state law.  Jackson, 443 U.S. at 324 n.16.

4                    2.  Bringing an Explosive into Jail

5                    Petitioner argues, as she did on direct appeal, that the evidence was insufficient to

6    support her conviction on the charge of bringing an explosive into jail, a violation of Cal. Pen.

7    Code § 4574, because the bullets secreted in her vagina were not "explosives" as that term is

8    defined in Cal. Pen. Code § 12301 or Cal. Health and Safety Code §§ 12000 and 12001.  In other

9    words, petitioner argues that the definition of "explosives" contained in other California statutes

10   should apply to the statute under which she was convicted as well.[2]

11                   In a partially published opinion, the California Court of Appeal held that the

12   definition of "explosives" contained in the Health and Safety Code and in Cal. Pen. Code §

13   12301 does not apply to Cal. Pen. Code § 4574.  People v. Grayson, 83 Cal.App.4th 479, 484-86

14   (2000).  The state court's conclusion in this regard may not be set aside in this federal habeas

15   corpus proceeding.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (a federal writ is not

16   available for alleged error in the interpretation or application of state law); Aponte v. Gomez, 993

17   F.2d 705, 707 (9th Cir. 1993) (federal courts are "bound by a state court's construction of its own

18   penal statutes"); Oxborrow v. Eikenberry, 877 F.2d 1395, 1399 (9th Cir. 1989) (a federal habeas

19   court must defer to the state court's construction of its own penal code unless its interpretation is

20   "untenable or amounts to a subterfuge to avoid federal review of a constitutional violation").

21   /////

22

23   ───────────────
           [2] Petitioner was convicted of a violation of Cal. Pen. Code § 4574, which provides, in
24   relevant part, that any person who knowingly brings into a jail "any firearms, deadly weapons, or
     explosives" is guilty of a felony.  Cal. Pen. Code § 12301 provides that the term "explosive"
25   means "any explosive defined in Section 12000 of the Health and Safety Code."  Section 12000
     of the Health and Safety Code provides a lengthy definition of the term "explosives."  Section
26   12001 of the Health and Safety Code provides an exclusion from liability for certain users and
     types of explosives.

                                                  6

The state appellate court also concluded that the evidence was sufficient to support petitioner's conviction pursuant to Cal. Pen. Code § 4574.  The court reasoned as follows:

> "[S]ection 4574 has a clear purpose: proscribing inmate possession of tangible items capable of use for armed attack and posing a serious threat to jail security."  (People v. Rodriguez (1975) 50 Cal.App.3d 389, 399.)  Total proscription is necessary if inmates and officers are to be protected.  (Id. at p. 396; People v. Talkington (1983) 140 Cal.App.3d 557, 561; People v. Carter (1981) 117 Cal.App.3d 546, 550.)  The statute does not require any specific intent on the part of a defendant.  (Talkington, supra, 140 Cal.App.3d at p. 561.)  "[S]ection 4574 is a stringent statute governing prison safety and serves an objective demanding relative inflexibility and relatively strict liability to problems compounded by inmate ingenuity."  (Talkington, supra, 140 Cal.App.3d at p. 563.)[3]
>
> Here, an expert witness described Grayson's .25-caliber semiautomatic weapon as having "a magazine that brings the bullets up . . . and operates from the gas explosion from the projectile."  He said the ammunition found on [petitioner] Grayson consisted of "live rounds," and he described these rounds as follows: "The end of it is a bullet.  Then you have a casing and the end is a primer. [¶] In between or underneath the bullet is an amount of powder and fire gunpowder.  The primer is ignited through the firing pin, and that creates an explosion of the powder inside there, driving the bullet out of the end of the weapon."  In response to a question from the prosecutor, the expert witness stated he had no reason to believe these bullets were "not explosive in nature."
>
> Given this testimony, there was ample evidence for the jury to conclude that by secreting this ammunition, defendant Grayson brought an explosive into the jail and violated section 4574.

(Grayson, 83 Cal.App.4th at 486-87.)

After reviewing the entire record, this court finds that the state court's conclusion that there was sufficient evidence to establish petitioner's guilt beyond a reasonable doubt is not

---

[3] [Petitioner] notes that Talkington relied in part on a definition of "firearm" found elsewhere in the Penal Code in determining that the weapon defendant possessed in jail could be classified as a "firearm."  (See 140 Cal.App.3d at p. 562.)  Given the policies behind, and strict liability imposed by, section 4574, we question whether this analysis was necessary.  However, whatever the merit of the Talkington analysis, its discussion is irrelevant to determining whether definitions of explosives found in other code sections are applicable here.

1  an unreasonable application of the federal due process standards set forth above.  Applying the

2  substantive elements of the criminal offense as defined by state law, a rational juror could have

3  found that petitioner knowingly brought an explosive into the jail.  Accordingly, this claim

4  should be denied.

5                    3.  Procuring for Purposes of Prostitution

6                    Petitioner also claims that the evidence was insufficient to support her conviction

7  of procuring Corrine for purposes of prostitution, in violation of Cal. Pen. Code § 266a.  She

8  argues that Corrine's trial testimony did not support a finding of force or false inducement.[4]

9                    The decision of the state court of appeal is the last reasoned state court rejection

10  of petitioner's claim in this regard.  The state court reasoned as follows:

> As defendants note, Corrine testified at trial that she went willingly
> with defendants and that defendants told her she could leave
> anytime.  She stated that she worked for herself when engaged in
> acts of prostitution, and that defendants never asked her to work for
> them.  Corrine testified she discussed prostitution only with
> Lucille, not defendants.  She gave money to defendants only to
> reimburse them for the costs of food and lodging.  She also
> testified that she had told Grayson that she was 18.
>
> However, this testimony was contradicted by officer Williams,
> who described her earlier interview with Corrine.  Corrine was
> standing on the street in Los Angeles, when defendants invited her
> into their car to get warm.  Corrine told defendants she was 14
> years old, and defendants responded that she would have to tell
> people she was 19.  As the car began moving, defendants told
> Corrine that she should come with them.  They talked about getting
> identification for her, and also talked to her about working as a
> prostitute.
>
> Officer Williams said Corrine "didn't know what to say to them,
> and the car was moving and they were explaining things to her and
> asking her questions, and she said that she really said very little to
> them and she still didn't feel well."  Defendants said, "[y]ou better
> just go along with this."  Defendants threw away Corrine's clothing
> and provided her with other attire more "appropriate" for a

---

[4]  Cal. Pen. Code § 266a provides, in relevant part, that "every person who . . . takes any
person against his or her will and without his or her consent, or with his or her consent procured
by fraudulent inducement or misrepresentation, for the purpose of prostitution . . . is punishable
by imprisonment . . . and a fine."

1

> prostitute.  Defendants told her how to behave, how much to charge, and what to say.

2

> Defendants brought a 14-year-old runaway from Los Angeles to Sacramento for the purposes of prostitution.  They initially got Corrine in the car by offering a place to get warm, and then implicitly threatened that things would not go well for her if she did not go along with them.  Defendants were older, physically more imposing, and armed.

3

4

5

6

> This evidence is sufficient to support defendants' convictions for violating section 266a.

7

8  (Opinion at 16-17.)

9          The state court's conclusion that there was sufficient evidence to establish

10  petitioner's guilt beyond a reasonable doubt is not an unreasonable application of the federal due

11  process standards set forth above.  Although Corrine's testimony at trial differed from that of

12  Officer Williams, the jury apparently chose to believe the police officer's testimony regarding

13  what Corrine had told him at the time petitioner was arrested and to disbelieve the contrary

14  testimony of Corrine.  Applying the substantive elements of the criminal offense as defined by

15  state law, and viewing the evidence in the light more favorable to the prosecution, a rational juror

16  could have found that petitioner procured Corrine by force or false inducement for purposes of

17  prostitution.  Accordingly, this claim should be denied.

18          B.  Jury Instruction Error

19          Petitioner raises several claims of jury instruction error.  After setting forth the

20  applicable legal principles, the court will analyze these claims in turn below.

21             1.  Legal Standards

22          In general, a challenge to jury instructions does not state a federal constitutional

23  claim.  See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456

24  U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  In order to

25  warrant federal habeas relief, challenged jury instructions "cannot be merely 'undesirable,

26  erroneous, or even "universally condemned,"' but must violate some due process right

1   guaranteed by the fourteenth amendment." <u>Prantil v. California</u>, 843 F.2d 314, 317 (1988)

2   (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973)).  To prevail on such a claim petitioner

3   must demonstrate "that an erroneous instruction 'so infected the entire trial that the resulting

4   conviction violates due process.'" <u>Prantil</u>, 843 F.2d at 317 (quoting <u>Darnell v. Swinney</u>, 823 F.2d

5   299, 301 (9th Cir. 1987)).  <u>See</u> <u>also</u> <u>Estelle</u>, 502 U.S. at 72.  In making its determination, this

6   court must evaluate the challenged jury instructions "'in the context of the overall charge to the

7   jury as a component of the entire trial process.'" <u>Prantil</u>, 843 F.2d at 817 (quoting <u>Bashor v.</u>

8   <u>Risley</u>, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Where the challenge is to a refusal or failure to

9   give an instruction, the petitioner's burden is "especially heavy," because "[a]n omission, or an

10  incomplete instruction, is less likely to be prejudicial than a misstatement of the law."

11  <u>Henderson v. Kibbe</u>, 431 U.S. 145, 155 (1977).  <u>See</u> <u>also</u> <u>Villafuerte v. Stewart</u>, 111 F.3d 616,

12  624 (9th Cir. 1997).

13                    2.  <u>Unanimity Jury Instruction on Kidnapping</u>

14          Petitioner claims that the trial court erred in failing to give a unanimity instruction

15  on the charge of kidnapping Shadell.  She argues that the jury may not have unanimously agreed

16  on which of three different acts constituted the kidnapping: transporting Shadell from the grocery

17  store to the motel, transporting Shadell from the motel to the convenience store, or transporting

18  Shadell from the motel to Stockton Boulevard.  This claim was rejected by the California Court

19  of Appeal in a written decision on petitioner's direct appeal, and by the California Supreme

20  Court without comment on habeas review.  (<u>See</u> Exs. F, G, H to Answer.)

21          The California Court of Appeal concluded that a unanimity instruction was not

22  required in this case because the prosecutor clearly specified which act formed the basis for the

23  kidnapping; namely, the transportation from the motel to Stockton Boulevard.  (Opinion at 23.)

24  The appellate court explained as follows:

25                  In his opening statement to the jury, the prosecutor said Shadell
                    would testify that she got into the car with [petitioner and co-
26                  defendant Lewis] because she thought she was going to get a ride

                                                    10

1    home.  Once at the motel, she was threatened with a gun and
     instructed how to work as a prostitute for [petitioner and co-
2    defendant Lewis].  The prosecutor said:

3            "And Shadell will tell you that she didn't want to stay, and
             she'll tell you why.  And Shadell will tell you that she was
4            taken out that night on June 1st to an area in and around the
             South Pointe to a street, and how she was made to walk the
5            street with Ms. Grayson, and how Ms. Grayson had that
             gun with her, and why Shadell went, and what Shadell
6            thought would happen to her if she didn't do what she was
             told."
7

8    In closing argument, the prosecutor was even more explicit.  He
     pointed out the differences between false imprisonment and
     kidnapping, and noted that kidnapping was essentially false
9    imprisonment plus movement.  He asserted Shadell was falsely
     imprisoned in the motel room and then said:
10

11           And what happens next?  She is taken down to
             Stockton Boulevard.  Okay.  She is transported out
12           of the hotel room into the car, out of the car, onto
             the street, the entire time with Miss Grayson who
13           has the gun.

14           "And Shadell said she knew she had the gun because she
             saw it.  She kept rearranging it in the crotch area of her
             pants, moving it up to the waistband area.  She had it with
15           her.

16           "And you heard Miss Grayson testify she keeps that
             gun with her for protection, all right, given her past.
17           So Shadell knew she had the gun.

18           "Is she confined in that car with the gun?  Yes.

19           "Is she there consentually [sic]?  No.  Therefore,
             false imprisonment.
20

21           "Is she being moved or transported?  Yes.

22           "From where to where?  From hotel room to car.
             That's transport.  That's transportation.  That's
23           movement from car to street.

24           "From one end of the street down to wherever?
             Grayson never left her alone.  Grayson said she
25           never ever, did not leave, did not let her out of her
             sight.

26   /////

                                11

> "So yes, there is imprisonment plus transportation
> or movement equals kidnapping, and that's why
> there's kidnapping in this case."
>
> Notwithstanding [petitioner's] contrary assertions, the prosecution
> clearly elected which act constituted kidnapping. Consequently,
> the trial court was under no obligation to give a unanimity
> instruction to the jury.

(Opinion at 23-25.)[5]

The requirement that a jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element of the charged offense beyond a reasonable doubt is a fundamental principle of criminal jurisprudence. See Richardson v. United States, 526 U.S. 813, 817 (1999); Schad v. Arizona, 501 U.S. 624, 634 n.5 (1991). However, a general unanimity instruction will normally be sufficient to instruct the jury that they must be unanimous as to the elements which form the basis of the conviction. United States v. Payseno, 782 F.2d 832, 835 (9th Cir. 1986). The exception to this general rule involves situations in which "there is a genuine possibility of jury confusion or that conviction may result from different jurors concluding that the defendant committed different acts." United States v. Echeverry, 719 F.2d 974, 975 (9th Cir. 1983). In such situations, "the general unanimity instruction does not suffice." Id. Juror confusion is a genuine possibility when the nature of the evidence is complex, when there is a discrepancy between the evidence and the indictment, or where some other particular factor creates such a possibility of confusion. United States v. Frazin, 780 F.2d 1461, 1468 (9th Cir. 1986).[6]

---

[5] Pursuant to California law, "[w]hen an accusatory pleading charges the defendant with a single criminal act, and the evidence presented at trial tends to show more than one such unlawful act, either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act." People v. Melhado, 60 Cal.App.4th 1529, 1534 (1998) (quoting People v. Gordon, 165 Cal.App.3d 839, 853 (1985)).

[6] A state criminal defendant in a noncapital case has no federal constitutional right to a unanimous jury verdict. Apodaca v. Oregon, 406 U.S. 404, 410-12 (1972); Schad, 501 U.S. at

1    In this case, there was no confusion regarding which acts committed by petitioner

2  formed the basis of the charge of kidnapping Shadell.  As explained by the California Court of

3  Appeal, the prosecutor clearly explained to the jury that the movement of Shadell from the motel

4  room to Stockton Boulevard constituted the kidnapping.  Under these circumstances, there was

5  no "genuine possibility of jury confusion or that conviction may result from different jurors

6  concluding that the defendant committed different acts."   Echeverry, 719 F.2d at 975.  This court

7  also notes that petitioner's jury received a general unanimity instruction, as follows: "in order to

8  reach verdicts, all 12 jurors must agree to the decision and to any finding you have been

9  instructed to include in your verdict." (RT at 645.)  That instruction was sufficient to apprise the

10  jury of the requirement of unanimity.

11    Petitioner notes that the charge of kidnapping Shadell was added after the close of

12  evidence, to conform to proof.  (See Reporter's Transcript on Appeal (RT) at 529.)  She argues

13  that, under these circumstances, the prosecutor could not have made an election during his

14  opening statement.  This contention lacks merit.  As it turned out, the prosecutor's early election

15  of specific facts supporting the kidnapping charge was borne out by the evidence at trial.  In any

16  event, the prosecutor's statements during his closing argument were sufficient to constitute an

17  election in this case.

18    Petitioner also argues that the record reflects the trial court, respondent, and the

19  probation department may have believed, contrary to the prosecutor's stated election, that the

20  kidnapping occurred when Shadell was transported from the grocery store to the hotel.  This

21  court's reading of the record does not bear out petitioner's assertion in this regard.  Rather, it

22  appears that the parties were assuming the entire series of events constituted a kidnapping.

23  (Answer, Ex. D at 32; RT at 672-73; Clerk's Transcript on Appeal (CT) at 246-47.)  Even

24  assuming arguendo that petitioner is correct, this fact does not change the result.  Petitioner's jury

25

26  637.  However, due process demands a certain "verdict specificity."  Schad, 501 U.S. at 637.

13

was informed by the prosecutor during his opening and closing statements that the kidnapping of Shadell occurred when she was transported from the motel to Stockton Boulevard. Accordingly, there could have been no juror confusion on this point. What other persons believed is irrelevant. The failure of the trial judge to give a specific instruction to the effect that the jury must agree unanimously on which conduct constituted the kidnapping of Shadell was not necessary under the circumstances of this case. Accordingly, this claim should be denied.

### 3. Unanimity Jury Instruction on the Firearm Use Enhancements

Petitioner also claims that the trial court erred in failing to give a unanimity instruction informing the jury that it must unanimously agree on which of two acts constituted petitioner's personal use of a firearm with respect to the charges involving Shadell.[7] She notes that the evidence showed she displayed the gun in the motel room and she also showed Shadell the gun on Stockton Boulevard. Petitioner argues that the jury may not have unanimously agreed which of these acts constituted the firearm enhancement as to each specific charge involving Shadell. The California Court of Appeal rejected this claim with the following language:

> Our previous discussion resolves this point as well. The prosecutor elected which act constituted each offense, and linked the charged enhancements accordingly. The prosecutor argued: "When you procure, which means to obtain somebody for the purpose of performing as a prostitute, and you do it through violence or threat like a gun, like sliding the slide on the gun back and showing the person a weapon, by implication what they're being told is that if you don't do it, you now, you may get shot."
>
> The prosecutor argued that pandering was committed "primarily by Miss Grayson when she attempts and quite frankly successfully gets [Shadell] out on Stockton Boulevard. [¶] She's havin' her to become a prostitute."
>
> Similarly, the prosecutor argued that Shadell was falsely imprisoned in the motel room, where she was menaced by [petitioner's] display of the gun, and then noted [petitioner's] use

---

[7] Petitioner was charged with and convicted of personal use of a firearm in connection with the charges of procuring Shadell, pandering with Shadell, false imprisonment of Shadell, and kidnap of Shadell. (CT at 130-35; 245.)

1     of the gun on Stockton Boulevard in conjunction with the
      kidnapping charge.
2
      The prosecutor correlated a particular instance of firearm use with
3     each of the charged offenses.  Since both the acts and the
      associated enhancements were clearly delineated, no further
4     unanimity instruction was required.

5   (Opinion at 25-26.)

6           Petitioner has failed to demonstrate that possible juror confusion mandated the use

7   of a special unanimity instruction with respect to the firearm use allegations.  As described by the

8   state appellate court, the prosecutor specifically described for the jury the actions constituting the

9   use of a firearm for each specific charge.  In addition, under the circumstances of this case, the

10  trial court's failure to give a unanimity instruction did not render petitioner's trial fundamentally

11  unfair.  The decision of the state appellate court rejecting this claim is not contrary to or an

12  unreasonable application of federal law.  Accordingly, the claim should be denied.

13          4.  <u>Lesser Included Offense</u>

14          Petitioner claims that the trial court erred in failing to instruct the jury on

15  contributing to the delinquency of a minor as a lesser included offense to the charge of procuring

16  Corrine for prostitution.

17          The United States Supreme Court has held that the failure to instruct on a lesser

18  included offense in a capital case is constitutional error if there was evidence to support the

19  instruction.  <u>See</u> <u>Beck v. Alabama</u>, 447 U.S. 625, 638 (1980).  The Supreme Court has not

20  decided whether this rationale also extends to non-capital cases.  <u>See</u> <u>Turner v. Marshall</u>, 63 F.3d

21  807, 818 (9th Cir. 1995), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Tolbert v. Page</u>, 182 F.3d 677 (9th Cir.

22  1999).  The Ninth Circuit, like several other circuits, has declined to extend <u>Beck</u> to find

23  constitutional error arising from the failure to instruct on a lesser included offense in a

24  non-capital case.  <u>See</u> <u>Windham v. Merkle</u>, 163 F.3d 1092, 1106 (9th Cir. 1998); <u>Turner</u>, 63 F.3d

25  at 819 (<u>citing</u> <u>Bashor v. Risley</u>, 730 F.2d 1228, 1240 (9ty Cir. 1984)).

26  /////

1    The trial court's refusal to give an instruction on the lesser included offense of

2  involuntary manslaughter did not rise to the level of a constitutional error for which federal

3  habeas relief is available because petitioner's trial was not a capital case.  To find a constitutional

4  right to a lesser-included offense instruction in this non-capital case would require the

5  application of a new rule of law, which the court may not do in a habeas proceeding under

6  Teague v. Lane, 489 U.S. 28 (1989).  See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000)

7  (habeas relief for failure to instruct on lesser included offense in non-capital case barred by

8  Teague because it would require the application of a new constitutional rule); Turner, 63 F.3d at

9  819 (same).  Under these circumstances, the decision of the California courts denying petitioner

10  relief as to this claim was not contrary to federal law as set forth in the decision in Beck.

11    Even if the Beck rule could be expanded to include a duty to instruct on lesser

12  included offenses in non-capital cases, petitioner has not shown that the refusal to give the

13  suggested jury instruction amounted to constitutional error in this case or rendered his trial

14  fundamentally unfair.  The California Court of Appeal rejected this claim on state law grounds,

15  reasoning as follows:

16    A trial court's obligation to instruct on relevant principles of law
    includes "giving instructions on lesser included offenses when the
17    evidence raises a question as to whether all of the elements of the
    charged offense were present [citation], but not when there is no
18    evidence that the offense was less than that charged." [People v.
    Breverman, (1998) 19 Cal.4th 142, 154.)  Instructions on lesser
19    included offenses are required "whenever evidence that the
    defendant is guilty *only* of [sic] the lesser offense is 'substantial
20    enough to merit consideration' by the jury."  (Id. at p. 162, italics
    added.)
21
    In other words, if the evidence justified a conviction on the lesser
22    offense of contributing to the delinquency of a minor but not the
    greater offense of procuring, an instruction on the lesser offense
23    should have been given.  (People v. Mathis, supra, 173 Cal.App.3d
    at p. 1257.)  That was not the situation here.
24
    This case presented a classic credibility contest. [Petitioner and co-
25    defendant Lewis] denied procuring Corrine by force or fraudulent
    inducement for purposes of prostitution.  Grayson said she had no
26    idea whether Corrine was a prostitute, and both [petitioner and co-

1    defendant Lewis] asserted they were completely uninvolved in any
     of Corrine's activities.
2
     Testimony from others presented a very different picture.  For
3    example, an officer described her earlier interview with Corrine in
     which Corrine said [petitioner and co-defendant Lewis] implicitly
4    threatened her to come with them and engage in prostitution.
     Another officer said Corrine stated she was scared of [petitioner
5    and co-defendant Lewis].  If the jury believed that evidence, it
     could not have convicted simply on the lesser charge of
6    contributing to the delinquency of a minor. [Petitioner and co-
     defendant Lewis] were guilty of procuring or nothing.
7
     Under these circumstances, the court was under no obligation to
8    instruct on the lesser included offense of contributing to the
     delinquency of a minor.
9
     Moreover, even if we were to conclude otherwise, any error was
10   harmless.  The evidence was strong, and it is not reasonably
     probable that [petitioner] would have obtained a more favorable
11   outcome had the court instructed on the lesser charge of
     contributing to the delinquency of a minor.  (People v. Breverman,
12   supra, 19 Cal.4th at p. 178.)

13   (Opinion at 20-22.)

14          This conclusion by the state appellate court is not based on an unreasonable

15   determination of the facts in this case, nor is it contrary to or an unreasonable application of

16   clearly established federal law.  Under federal law, a lesser included offense instruction should be

17   given "if the evidence would permit a jury rationally to find [a defendant] guilty of the lesser

18   offense and acquit him of the greater."  Hopper v. Evans, 456 U.S. 605, 612 (1982) (quoting

19   Keeble v. United States, 412 U.S. 205, 208 (1973)).  Put another way, a lesser included offense

20   instruction is not necessary where the evidence is such that "[a] rational jury could not have

21   convicted [the defendant] of any lesser-included offense without relying on the precise evidence

22   which establishes guilt of the offenses charged."  United States v. Linn, 880 F.2d 209 (9th

23   Cir.1989), abrogated on other grounds by Florida v. White, 526 U.S. 559 (1999).  Here, as

24   explained by the state court, a rational jury could not find petitioner contributed to the

25   delinquency of Corrine, a minor, without also finding that she procured Corrine for purposes of

26   /////

                                               17

1  prostitution.  Accordingly, the trial judge did not err in failing to instruct the jury on the

2  lesser-included offense.

3          C.  Admission of Evidence

4          Petitioner claims that her due process right to a fair trial was violated by the

5  admission into evidence of a letter found among her effects in the trunk of co-defendant Lewis'

6  car.  This claim was rejected by the California Court of Appeal in a written decision on

7  petitioner's direct appeal, and by the California Supreme Court without comment on petition for

8  review.  (See Exs. F, G, H to Answer.)

9          The California Court of Appeal fairly described the background to this claim as

10  follows:

11          When officers searched the trunk of Lewis's car, they found a
           duffel bag containing Department of Motor Vehicle applications in
12          Grayson's name.  The duffel bag also contained a letter (See [sic]
           which read as follows:
13
           "Dear April, what's up, dog?  Well, as for me I'm fine.  Just sitting
14          here thinking of how you were talking in group.  I'm kind of in the
           same situation.  I have no family.  But Pete dog, you got to get
15          through your life and let the past be gone.  My mom left me when I
           was very little and pops was never around.  Girl, trust I know that
16          you are going through . . . . [Y]ou don't really take holidays serious
           because I got so used to having no place to go.  I been locked up
17          most holidays for two years, but we'll make the best of it while
           we're here.  Okay, dog?  Don't trip.  Well, how are you?  I know it
18          could be better.  Well, as for me I'm chillin' like a villain still
           pimpin' these hoes.  Don't let it get you down.  Happy
19          Thanksgiving from someone who cares, dog.  Stay up, big homey,
           everything is gonna be all right.  Just have fun.  Be good, love, the
20          OG, twisted pimp of the 95, still pimpin' with a smile and a couple
           ha ha's.  P.S.  All I've been through, and I'm still pimpin' these
21          hoes."

22          [Petitioner] Grayson objected to the admission of this letter,
           asserting it was not relevant and was prejudicial.  She pointed out
23          that the author of the letter was unknown.  The prosecutor
           countered that it was relevant because it made reference to
24          prostitution.  The court overruled the objection, noting the letter
           discussed prostitution and was found in Grayson's effects.
25

26  (Opinion at 6-7.)

                                    18

1          The state appellate court found that the relevance of this letter to the charges

2   against petitioner was "marginal."  (Id. at 9.)  However, the court concluded that any error in

3   admitting the letter into evidence was harmless.  The court reasoned as follows:

4          Since Grayson acknowledged she had previously been a prostitute,
           and had associated with people she knew to be prostitutes, the
5          additional evidence that she might have known someone who
           claimed to be a pimp was less than pivotal and can hardly be
6          deemed prejudicial.

7                                          * * *

8          Given the evidence adduced at trial, it is not reasonably probable
           that a result more favorable to [petitioner and co-defendant Lewis]
9          would have been reached had the letter been excluded.

10  (Id. at 10.)

11         In order to grant habeas relief where a state court has determined that a

12  constitutional error was harmless, a reviewing court must determine: (1) that the state court's

13  decision was "contrary to" or an "unreasonable application" of Supreme Court harmless error

14  precedent, and (2) that the petitioner suffered prejudice under Brecht v. Abrahamson, 507 U.S.

15  619 (1993) from the constitutional error.  Inthavong v. LaMarque, 420 F.3d 1055 (9th Cir. 2005).

16  Because both of these tests must be satisfied before relief can be granted, a habeas court may

17  address them in any order.  Id. at 1061.  This court will address whether petitioner suffered

18  prejudice under Brecht from the trial court's decision to admit the letter into evidence at

19  petitioner's trial.

20         On collateral review, an error is not "harmless" if it "had substantial and injurious

21  effect or influence in determining the jury's verdict."  Brecht, 507 U.S. at 637.  In determining

22  whether an error is harmless, the question is "what effect the error had or reasonably may be

23  taken to have had upon the jury's decision.'"  Wade v. Calderon, 29 F.3d 1312, 1322 (9th

24  Cir.1994) (quoting Brecht, 507 U.S. at 642-43 (Stevens, J., concurring)), overruled on other

25  grounds by Rohan ex rel. Gates v. Woodford, 334 F.3d 803, 815 (9th Cir.2003).  An error is not

26  harmless if a reviewing court is "in grave doubt" as to whether the error had "substantial and

1 | injurious effect or influence."  <u>O'Neal v. McAninch</u>, 513 U.S. 432, 435 (1995)

2       As discussed by the state appellate court, a letter implying that petitioner might

3 know someone who claimed to be a pimp could not have had a significant effect on the verdict in

4 this case.  The letter had nothing to do with the petitioner's conduct or actions, either in the past

5 or during the events at issue in the trial.  That information was provided by petitioner herself,

6 who admitted she had been a prostitute and had associated with pimps.  Further, during trial

7 petitioner testified that she was aware Lucille had been a prostitute and that she had accompanied

8 Shadell to Stockton Boulevard for the purpose of prostituting herself to earn money.  (RT at 497,

9 500, 504.)  Under these circumstances, admission of this letter did not render petitioner's trial

10 fundamentally unfair or have an injurious effect on the verdict.  <u>Brecht</u>, 507 U.S. at 637.

11 Although the letter did not cast a favorable light on the persons with whom petitioner tended to

12 associate, in light of other evidence in this case it could not have had the "substantial" effect on

13 the verdict required under <u>Brecht</u>.  Because petitioner has failed to demonstrate harmless error

14 under <u>Brecht</u>, she is not entitled to habeas corpus relief on this claim.  <u>Inthavong</u>, 420 F.3d at

15 1062.

16    D.  <u>Marsden Hearing</u>

17       Petitioner claims that the trial judge erred in failing to conduct a <u>Marsden</u> hearing

18 after she complained at sentencing that her trial counsel had not provided an adequate defense.[8]

19 The California Court of Appeal rejected this claim as follows:

20       [Petitioner's] claim is predicated on an exchange between
      [petitioner] and the court at the sentencing hearing.  The court
21       imposed sentence and then advised defendant of her right to
      appeal, including the need to file any notice of appeal within 60
22       days.  The following colloquy occurred immediately after this
      advisement:
23
24       "[PETITIONER]: May I ask a question?

25    [8]  In <u>People v. Marsden</u>, 2 Cal.3d 118 (1970), the California Supreme Court held that a
trial court must permit a defendant seeking a substitution of counsel after the commencement of
26 the prosecution's case to specify the reasons for his request.

1

2          "THE COURT: Sure.

3          "[PETITIONER]: When I go for appeal and I say that maybe my
           counsel inadequately represented me, I have to make a motion of
           that now and make it on the record so that when I bring that up

4          against the appeal, it could be said that she made a note of that in
           court, right?

5          "[THE COURT]: You know, I am not sure.  You can always – you
           had a constitutional right to effective representation of counsel, so

6          that claim can be made at any time.

7          "[PETITIONER]: As long as I basically voice it when I go back on
           appeal, it has been made in the transcripts, so when he calls for

8          these transcripts they will say she made a motion of this.

9          "[THE COURT]: This record, there's no waiver of that claim, and
           this record will reflect that.

10
           "[PETITIONER]: I would like to claim that.  Thank you.
11
           "[THE COURT]: But you still have to file the notice of intention to
12         appeal.

13         "[PETITIONER]: Thank you, I understand that."

14         While [petitioner] is correct in noting that a <u>Marsden</u> motion may
           be raised at anytime, even at sentencing, no <u>Marsden</u> motion was

15         made here.  [Petitioner's] question concerned only a matter of
           appellate procedure, namely, whether a claim of ineffective

16         assistance of counsel would be deemed waived on appeal if it had
           not been raised in the trial court.  [Petitioner] did not ask the court

17         to appoint substitute counsel.  Indeed, since there was no indication
           [petitioner] wanted to file a motion for new trial or any other

18         motion in the trial court, there was no need to substitute counsel at
           that time.

19
           "A trial judge should not be obligated to take steps toward
20         appointing new counsel where defendant does not even seek such
           relief."  (<u>People v. Gay</u> (1990) 221 Cal.App.3d 1065, 1070.)  Since

21         [petitioner] did not make a <u>Marsden</u> motion, the court was under
           no obligation to make the inquiries mandated by that case.  There

22         was no error.

23  (Opinion at 27-29.)

24         A trial court has a duty to conduct an inquiry when a party seeks substitute

25  counsel.  <u>United States v. Smith</u>, 282 F.3d 758, 764 (9th Cir. 2002); <u>United States v. Musa</u>, 220

26  F.3d 1096, 1102 (9th Cir.2000).  However, there is no need for such an inquiry if the party "has

not evidenced his dissatisfaction or wish to remove his appointed counsel." <u>United States v. Iles</u>, 906 F.2d 1122, 1131 (6th Cir. 1990).  Here, petitioner did not express a desire to have her attorney replaced, to proceed pro se, or even to file a motion for new trial with different counsel. There was no motion for substitution of counsel or anything that approximated such a motion. The gist of petitioner's comments was that she wished to raise on appeal a claim of ineffective assistance of trial counsel.  Her remarks were not in any way focused on retaining new counsel and did not serve to alert the trial court to any such desire.

The court also notes that petitioner's co-counsel made an oral motion for substitution of counsel in petitioner's presence immediately before petitioner was sentenced. (RT at 663.)  Petitioner could have made a similar motion but did not do so.  In addition, it is clear that the trial court did not construe petitioner's comments as a request for substitute counsel but rather as a question about filing an ineffective assistance of counsel claim on appeal.  (<u>See</u> RT at 679-80.)  Petitioner did not correct the judge's perception in this regard or rephrase any request for substitute counsel.  (<u>Id.</u>)  Since the trial court was not put on notice that petitioner wanted a substitution of counsel, it had no duty to conduct a <u>Marsden</u> inquiry.  <u>See</u> <u>United States v. Robinson</u>, 913 F.2d 712, 716 (9th Cir. 1990) (trial court did not have a duty to conduct an inquiry into substitute counsel where defendant did not make any such request); <u>United States v. Padilla</u>, 819 F.2d 952, 956 (10th Cir.1987) ("the district court should make formal inquiry into the defendant's reasons for dissatisfaction with present counsel *when substitution of counsel is requested* ") (emphasis added).

Even assuming that petitioner made a valid motion for substitution of counsel, it was appropriately rejected by the trial court.  Given the lateness of the motion, the apparent absence of any factual basis for substitution of counsel, and the ambiguous way in which the request, if any, was made, the trial court's failure to engage in any further inquiry on the subject was not error.  <u>See</u> <u>United States v. Castro</u>, 972 F.2d 1107, 1109 (9th Cir.1992), <u>overruled on other grounds by</u> <u>United States v. Recio</u>, 537 U.S. 270 (2003).  Accordingly, for all of these

1    reasons, petitioner is not entitled to relief on this claim.

2          E.   Conviction of Lesser Included Offenses

3          Petitioner claims that her convictions of false imprisonment and kidnapping of

4    Shadell must be reversed because they are lesser included offenses of other charges of which she

5    was convicted.  As described above, petitioner was convicted of kidnapping, false imprisonment,

6    procuring, and pandering with respect to her actions involving Shadell.  Petitioner argues that

7    false imprisonment is a necessarily included offense of kidnapping and kidnapping is a necessary

8    included offense of procuring.[9]

9          The decision of the state court of appeal is the last reasoned state court rejection

10   of petitioner's claim in this regard.  The appellate court found that petitioner's conviction on the

11   charge of false imprisonment of Shadell was not a lesser included offense of the charge of kidnap

12   of Shadell because, under the facts of this case, those charges related to two distinct events.

13   (Opinion at 32.)  Specifically, "the false imprisonment of Shadell took place in the motel room,

14   while the kidnapping occurred when [petitioner] took Shadell from the motel to Stockton

15   Boulevard."  (Id.)  The appellate court also concluded that the kidnapping charge was not a lesser

16   included offense of procuring because "[p]rocuring does not require asportation; kidnapping

17   does.  Thus, the crime of procuring, even if committed by force, can be committed without

18   transporting the victim.  In other words, procuring does not necessarily include kidnapping."  (Id.

19   at 33.)  The state court's decision in this regard may not be set aside in this federal habeas corpus

20   petition.  See Estelle, 502 U.S. at 68; Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000);

21   Middleton, 768 F.2d at 1085 (citing Engle 456 U.S. at 119) (a federal writ is not available for

22   alleged error in the interpretation or application of state law).

23          In federal court, a criminal defendant may not be convicted of both an offense and

24

25   ─────────────
          [9]  Pursuant to California law, multiple convictions may not be based on necessarily included offenses, and when a jury finds a defendant guilty of both a greater and lesser included offense, the conviction of the lesser included offense must be reversed.  People v. Pearson, 42

26   Cal.3d 351, 355 (1986); People v. Moran, 1 Cal.3d 755, 763 (1970).

a lesser offense necessarily included within that offense.  Rutledge v. United States, 517 U.S. 292, 307 (1996) (holding that multiple convictions were barred where appellant was convicted of both greater and lesser included offense).  A court may not impose punishment for both offenses without violating the Double Jeopardy Clause.  Id. at 300.  In this case, however, as found by the state appellate court, petitioner was not convicted of necessarily included offenses by virtue of her conviction of false imprisonment and kidnapping.  Accordingly, she is not entitled to relief on this claim.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 21, 2005.

UNITED STATES MAGISTRATE JUDGE

008:gray2218.hc

24